IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JONATHAN D. HILLARD,         )
         )
         Plaintiff,      )
         )
         v.         )   Civil Action No. 19-623
         )
         )
ANDREW M. SAUL         )
ACTING COMMISSIONER         )
OF SOCIAL SECURITY,         )
         )
         Defendant.   )

O R D E R

AND NOW, this 11th day of September, 2020, upon consideration of Defendant's Motion

for Summary Judgment (Doc. No. 13), filed in the above-captioned matter on February 10, 2020,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No.

11), filed in the above-captioned matter on January 10, 2020,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN

PART.  Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the

Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and

denied in all other respects.  Accordingly, this matter is hereby remanded to the Commissioner

for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

I.    **Background**

On July 1, 2015, Plaintiff Jonathan D. Hillard protectively filed an application for

disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq.,

and on December 10, 2015, he protectively filed a claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq.  Specifically, Plaintiff claimed that he became disabled on June 4, 2015, due to epilepsy, stroke, left side paralysis caused by stroke, depression, anxiety, ADHD, asthma, and nerve pain.  (R. 128, 144).

After being denied initially, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on October 27, 2017.  (R. 36-87).  In a decision dated April 11, 2018, the ALJ denied Plaintiff's request for benefits.  (R. 17-28).  The Appeals Council denied Plaintiff's request for review on March 25, 2019.  (R. 1-6).  Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II.    <u>Standard of Review</u>

Judicial review of a social security case is based upon the pleadings and the transcript of the record.  <u>See</u> 42 U.S.C. § 405(g).  The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact.  <u>See</u> <u>Matthews v. Apfel</u>, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); <u>Schaudeck v. Comm'r of Soc. Sec. Admin.</u>, 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion.  <u>Plummer v. Apfel</u>, 186 F.3d 422, 427 (3d Cir. 1999) (quoting <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995)).  However, a "'single piece of evidence will not satisfy the substantiality test if the

[Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence— particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. §§ 404.1520, 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522, 416.922. If the claimant fails to show that his or her

3

impairments are "severe," he or she is ineligible for disability benefits.  If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the criteria for a listed impairment ("Listing").  See 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If a claimant meets a Listing, a finding of disability is automatically directed.  If the claimant does not meet a Listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability.  See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience.  See id.  The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. §§ 404.1523, 416.923.

## III.  The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since June 4, 2015, the alleged onset date.  (R. 20).  The ALJ also found that Plaintiff met the second requirement of the process insofar as he has certain severe impairments,

4

specifically, epilepsy, status-post transient ischemic attack, obesity, major depression, generalized anxiety disorder, history of ADHD, and PTSD.  (R. 20).  The ALJ further concluded that Plaintiff's impairments did not meet any of the Listings that would satisfy Step Three. (R. 20-21).

The ALJ next found that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain additional limitations.  (R. 22).  At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work, and she moved on to Step Five.  (R. 26).  The ALJ consulted a vocational expert ("VE") to determine whether or not a significant number of jobs exist in the national economy that Plaintiff could perform.  The VE testified that, based on Plaintiff's age, education, work experience and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as deburrer, trimmer, and stuffer.  (R. 27).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. 27-28).

**IV.**   **Legal Analysis**

While the Court does not fully agree with the arguments set forth by Plaintiff as to why he believes that the ALJ erred in finding him to be not disabled, it does agree that remand is warranted in this case.  Specifically, because the Court finds that the ALJ did not properly explain the basis for her determination that Plaintiff's impairments do not meet or medically equal the severity of the Listings at Step Three of the sequential evaluation process, the Court cannot find that the ALJ's decision is supported by substantial evidence.  Accordingly, the Court will remand the case for further consideration.

At the outset, the Court notes that the Listings operate as a regulatory device used to streamline the decision-making process by identifying claimants whose impairments are so

5

severe that they may be presumed to be disabled.  See 20 C.F.R. §§ 404.1525(a), 416.925(a).  A claimant has the burden of proving a presumptively disabling impairment by presenting medical evidence that meets all of the criteria of a listed impairment or is equal in severity to all of the criteria for the most similar listed impairment.  See 20 C.F.R. §§ 404.1526, 416.926.

In the present case, Plaintiff claims that he has an impairment that meets the requirements of Listing 11.02, Epilepsy, which requires documentation providing a detailed description of a typical seizure, and is characterized by one of the following:

A. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

B. Dyscognitive seizures (see 11.00H1b), occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or

C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)); or

D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
    1. Physical functioning (see 11.00G3a); or
    2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
    3. Interacting with others (see 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
    5. Adapting or managing oneself (see 11.00G3b(iv)).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02.

Additionally, Section 11.00H provides the following descriptions of epileptic seizures:

a. *Generalized tonic-clonic seizures* are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling.

b. *Dyscognitive seizures* are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure (see 11.00H1a).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.00(H)(1).

Although Plaintiff states that he "possibly" meets Listings 11.02C and 11.02D, he argues more specifically that the evidence overwhelmingly supports a finding that he meets the requirements of Listing 11.02A. (Doc. No. 15, at 21-25). Plaintiff asserts that the ALJ erred in failing to find that he meets that Listing or, at a minimum, that the ALJ erred in failing to discuss adequately why she found that Plaintiff does not meet that Listing.

The Court notes that the ALJ plainly found at Step Three of her analysis that Plaintiff's impairment does not meet the criteria of any of Listing 11.02's subparts. With regard to Section 11.02A, the ALJ simply stated that Plaintiff "does not have generalized tonic clonic seizures," and the only rationale that she clearly provided for such conclusion is that Plaintiff's EEGs have been normal. (R. 21). Plaintiff points out, however, that abnormal EEGs are not required in order to establish that an individual experiences such seizures, and that the evidence indicates that he does in fact have tonic-clonic seizures. While Plaintiff admits that his medical care

providers do not label his seizures "tonic-clonic," he emphasizes that they describe his seizures as tonic-clonic seizures are described in Section 11.00H.

Specifically, Plaintiff identifies evidence of record describing Plaintiff's father as having witnessed him twitching during one event and evidence indicating that he bit his tongue during another event. (R. 505). The record also includes a description of another event where Plaintiff's father found him lying on the floor, unresponsive, with his eyes rolled back into his head, and experiencing bladder incontinence. (R. 501). Another portion of the record describes an event where Plaintiff woke up on the floor, having experienced bowel and bladder incontinence and having bitten his lip. (R. 743). As such descriptions of Plaintiff's seizures appear to be in line with the definition of tonic-clonic seizures provided in Section 11.00, the Court concludes that the ALJ erred in simply stating that Plaintiff does not have tonic-clonic seizures without additional discussion. Instead, the ALJ should have addressed more clearly the evidence regarding Plaintiff's seizures in her analysis of whether he meets the requirements of Listing 11.02A.

Regardless of the nature of his seizures, Defendant contends that Plaintiff has not shown that his seizures meet Listing 11.02A's frequency requirement. The Court notes that the parties argue at some length in their briefs as to whether the record supports a finding of a sufficient number of seizures, citing a great deal of evidence of record. Upon consideration of the parties' positions on the issue, however, the Court concludes that the evidence regarding the timing and number of Plaintiff's seizures is quite complex, and, if Plaintiff is found to experience tonic-clonic seizures, the record should be carefully reviewed—and possibly be further developed if necessary—at the administrative level in order to determine whether the frequency requirement of Listing 11.02A has been met. Therefore, on remand, if the ALJ—after adequate discussion of

the evidence of record—concludes that Plaintiff does in fact experience tonic-clonic seizures, the ALJ should then also determine whether his seizures meet the frequency requirement of Listing 11.02A.

The Court therefore finds that the ALJ's analysis lacks clarity as to whether the ALJ considered evidence potentially supportive of a finding that Plaintiff's impairments meet Listing 11.02A. Further, it is not apparent whether the ALJ considered such evidence and found that it did not, in fact, show that Plaintiff meets that Listing, or whether the ALJ simply failed to consider the evidence altogether in this context. It is thus unclear whether all the relevant evidence of record was considered at Step Three. Because consideration of all relevant evidence is critical in determining whether or not Plaintiff meets Listing 11.02A, the Court finds that remand is required to more thoroughly, and accurately, discuss whether Plaintiff meets that Listing.

Because the Court finds that the ALJ's discussion and evaluation of whether Plaintiff's impairment meets or medically equals Listing 11.02A are insufficient in this case, the Court also finds that the ALJ's decision is not supported by substantial evidence. While the ALJ is certainly permitted to find that Plaintiff does not meet any of the Listings, the Court finds that the ALJ's justification for such conclusion, which includes minimal discussion regarding Listing 11.02A, is simply insufficient here. Thus, remand is required to allow for discussion as to the ALJ's evaluation of the evidence in this regard, along with her ultimate decision in Plaintiff's case.

Additionally, although the Court takes no position as to Plaintiff's remaining issues, the ALJ should, of course, ensure that proper weight be accorded to the various opinion and medical evidence presented in the record. Further, the ALJ should verify that her conclusions concerning

the other subparts of Listing 11.02, as well as any possible conclusions regarding Plaintiff's

RFC, are fully explained, in order to eliminate the need for any future remand.

**V.      <u>Conclusion</u>**

In short, because the ALJ failed to properly discuss the evidence of record concerning

whether Plaintiff's impairments meet or medically equal the criteria for Listing 11.02A, the

Court finds that substantial evidence does not support the ALJ's determination in that regard or

her ultimate decision in this case.  The Court hereby remands this case to the ALJ for

reconsideration consistent with this Order.

<u>s/Alan N. Bloch</u>
United States District Judge

ecf:          Counsel of record